UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-20507-Civ-MOORE
MAGISTRATE JUDGE P.A. WHITE

LEONARD ADAMS,

    Petitioner,

v.                                        REPORT OF
                                      MAGISTRATE JUDGE
JULIE JONES,

    Respondent.

_____/


## I.   Introduction

Leonard Adams has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging the constitutionality of his conviction and sentence entered following a jury verdict in the Eleventh Judicial Circuit for Miami-Dade County in case no. F09-4381.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition (DE# 1), the court has the response of the state to this court's order to show cause, along with its supporting appendix (DE# 15, 16, 17), containing copies of relevant state court pleadings, along with the trial and sentencing documents.


## II. Claims

Construing the arguments liberally as afforded *pro se* litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the petitioner raises the following grounds for relief:

**Claim 1:** Ineffective assistance of counsel for failing to object to the reading of the forcible felony instructions under Fla. Stat. §776.041(1) (2009) without a charge of an independent felony;

**Claim 2:** Ineffective assistance of counsel for failing to object to combining both of the victims' injuries in a single defense instruction;

**Claim 3:** Ineffective assistance of counsel for failing to object to the application of the initial provoker section, Fla. Stat. §776.041(2), of the justifiable use of force instruction as it deprived petitioner of the stand your ground defense;

**Claim 4:** Ineffective assistance of counsel for failing to object to inadmissible bad character testimony of petitioner allegedly physically abusing Emma Harrison;

**Claim 5:** Ineffective assistance of counsel for failing to object to the trial court's failure to make factual determinations in support of denying petitioner's motion to dismiss;

**Claims 6 & 7:** Ineffective assistance of counsel where counsel permitted impeachment evidence to be used as substantive evidence of guilt and failed to move for a limited instruction on the use of impeachment evidence;

**Claims 8 & 9:** Ineffective assistance of counsel for failing to investigate and present evidence and expert testimony regarding gunpowder residue; and

**Claim 10:** He was denied a fundamentally fair trial due to the impact of cumulative errors committed by defense counsel.

III.  Factual and Procedural History

The State of Florida charged Petitioner by information with

2

second degree murder of Jimmy Harrison and attempted first degree murder of Emma Harrison. (DE# 16, App. B, pgs 16-19).

Rasheda Harrison testified for the state as follows. Rasheda is Emma Harrison's niece and Jimmy Harrison's cousin. On February 5, 2009 around 7:00 or 8:00 pm, Rasheda decided to go visit her aunt, who lived two houses down from her house. In addition, Jimmy's father told her to go down the street to get Jimmy because he heard some arguing. When she arrived, Jimmy was standing by the pathway on the side of the house and Emma was standing on a little porch connected to the shed. Adams was by the back of his trailer in front of her car. (DE# 17, T. 315-320, 330).

Rasheda came in through the gate on the side of the house and saw Jimmy and Adams arguing, while Adams was loading the back of his trailer. Jimmy was telling Adams to pack up his stuff and leave. Rasheda put her arm on Jimmy's chest and told him to calm down, go to her house, and wait for Adams to pack and leave. (DE# 17, T. 379). Both were yelling obscenities back and forth, Jimmy calling Adams names for "putting his hands on my mother." Emma was also telling Petitioner to leave. (DE# 17, T. 320-321, 334, 339). Rasheda did not see a gun or weapon on Jimmy.

Petitioner was angry and riffling through his things. Rasheda did not see Jimmy go toward Adams. After Adams and Jimmy exchanged a few more obscenities, Rasheda looked over her shoulder and saw Adams pull out a gun. (DE# 17, T. 322-323). She said at first she could not see it because the gun was covered by a plastic bag and that she could only see the barrel. It looked like a big gun, a shotgun or rifle. As Adams pulled out the gun, he cocked it back.

At that point, Jimmy grabbed the front of her coat and slung

Rasheda over to the right and put out his left arm to shield his mom, Emma. (DE# 17, T. 324). She saw the first shot hit Jimmy in the chest. She saw Jimmy hold his chest and stumble back (DE# 17, T. 342). Jimmy told her to run and she responded by telling him , no "you run." At his insistence, she started running along the side of the house. She turned back and saw Jimmy running behind her, and Petitioner chasing Jimmy. (DE# 17, T. 343). She exited to the front and ran to the left and Jimmy stumbled to the right. She did not see the other shot but saw a flash and heard Jimmy say "I'm gone Rasheda, I'm gone." She saw a next door neighbor and told the neighbor to call the police. (DE# 17, T. 324-325).

While at the neighbor's house, Rasheda did not see Adams come out, however, she did hear another shot. The neighbor told her to go inside and Rasheda replied that she had to go her aunt. (DE# 17, T. 326). She went outside and saw her aunt stumbling from the side of the house with blood running down the side of her face. Rasheda came to her aunt's aid and told her aunt to get out of the street because she could hear Petitioner's truck. She helped her aunt to the neighbor's couch and went looking for Jimmy. She found him lying on the floor across the street. (DE# 17, T. 327-328, 345).

**START**

Emma Harrison testified as follows.  She had lived with Adams for the last six years, and their relationship was not "rosy." They both lived at her house. In 2007, Emma asked Petitioner to leave her house because he was getting jealous of her children and becoming violent. As of 2009, Petitioner had not left her house but they were living in separate rooms.

At some point, Emma said that her house "mysteriously caught fire," so she moved to the utility shed in the back. On February 5, 2009, Emma and Adams had an argument because Emma again asked him

4

to leave and he refused. As he left the house, he said that she needed to dig two graves. (DE# 17, T. 349-353). She did not see him again until he came back from work that evening. She was outside the utility shed when heard a gunshot. She knew Petitioner owned a gun. She asked the neighbor, Ms. Ivey, if she also heard the gunshot and she concurred. Emma tried to call her sister, however, Adams came in the shed and snatched the phone from Emma. (DE# 17, T. 353-355).

Shortly thereafter, Emma's son Jimmy was standing with her outside by the shed when Adams exited the main house and Jimmy said "Leonard, I want to have a man-to-man talk to you." (DE# 17, T. 355). Jimmy told Adams that he could disrespect him but not his mother. Adams responded, "o.k. so you want me to leave," went into the shed, and started gathering some clothes. (DE# 17, T. 356-358, 370).

Jimmy continued to advise Adams to leave and Adams responded with insults. The fight between Adams and Jimmy intensified. Adams pulled out a bag and Emma saw the shape of a gun underneath. She screamed at her son that Adams had a gun. Adams aimed the gun, "pumped" it, and shot Jimmy. Emma saw Jimmy pushing Rasheda to the side of the house, while grabbing his chest and stumbling. He then also ran along the side of the house towards the front yard. (DE# 17, T. 358-360). A moment later, Adams pumped the gun again and shot at Jimmy a second time. (DE# 17, T. 360). Emma then jumped on Adams as he was getting ready to fire a third shot, so her son had a chance to run away. (DE# 17, T. 360, 386). She struggled with Adams until he threw her to the ground. (DE# 17, T. 360-361). Emma heard the gun click and as she turned around, she saw the "fire" come out of the gun and hit her on her side. As she felt a burning sensation on her back, she rolled over. (DE# 17, T. 361). Adams

stood in front of her, she looked up, and he shot her in the head. She felt burning and blood dripping. (DE# 17, T. 361).

Adams made an effort to pump the gun again, to no avail.  He then started kicking her on the side where she had been shot. (DE# 17, T. 362). She managed to stand up and stagger to the front yard, at which point, Adams jumped in his truck and drove away. (DE# 17, T. 363, 388).

Crime scene investigator Lauren Bird, from Miami Gardens Police Department, processed the scene.  She took photographs of the evidence.  She found four spent casings but no other weapons. (DE# 17, T. 276-284).  The deceased Jimmy Harrison laying diagonally across the street. (DE# 17, T. 284-286).  She ordered that gun residue be collected from Emma and Jimmy Harrison, however, there were no reports.  Cynthia Alexander, also a crime scene investigator, helped Ms. Bird with the investigation. (DE# 17, T. 290-292).  At Jackson Memorial Hospital, she photographed the deceased and Ms. Harrison. (DE# 17, T. 298).  She observed three gunshot wounds on Ms. Harrison, specifically, two on her back and one on her forehead. (DE# 17, T. 296-297).  Alexander also photographed Petitioner's four door red Ford pickup and attached wooden trailer. She found a weapon inside the vehicle. (DE# 17, T. 299-300).

Miami Gardens Police Department Detective Gilbert Viera was at the station doing paperwork when Adams arrived and said he wanted to turn himself in.  Adams appeared calm and collected. Officer Viera observed a small laceration on Adams's hand and a spot on his pants that appeared to be blood. Officer Viera placed Adams in custody and took him to an interview room. (DE# 17, T. 304-311).

Dr. Jennifer Park, Associate Medical Examiner, testified that Jimmy Harrison had three gunshot wounds. (DE# 17, T. 425). Two of those wounds were "grazed gunshot wounds" and one was a penetrating gunshot wound with no exit. (DE# 17, T. 417, 420-421). The former wounds were not fatal while the latter wound was fatal, as it caused Jimmy to bleed out internally. (DE# 17, T. 422-23, R. 109, 111). Jimmy died from the chest gunshot wound. (DE# 17, T. 424).

At the close of the State's case, Petitioner moved for a judgment of acquittal, arguing that the State failed to meet the elements of the crimes as charged, particularly that there was no evidence of premeditation for the attempted first degree murder (DE# 17, T. 427-428). After some discussion about premeditation and the evidence or lack thereof, the court denied the motion for judgment of acquittal. (DE# 17, T. 431).

Adams testified in his own defense. (DE# 17, T. 435). He testified that he knew Jimmy Harrison before he began having a relationship with Jimmy's mother. He alleged that Jimmy never liked him. (DE# 17, T. 437-439) He did not recall having many conversations with Jimmy and only had two arguments. He recalled the incident where Jimmy's car paint ended up in Petitioner's car and how the argument between the two escalated. At some point Jimmy, who kept heckling "what are you going to do about it," as well as other insults, pulled out a gun and shot up in the air. (DE# 17, T. 439-440). Petitioner claimed he was in fear of Jimmy every day after this incident (DE# 17, T. 441-442).

On the day in question, Petitioner got home to the shed and found Emma on the phone. When she did not reply to his greeting, he grabbed the phone from her and put it to his ear. Emma said "don't say nothing, he got my phone." He wondered why she would say that

and he dropped the phone. He had gone to the shed to get some clothes and went in the house to take a shower. When he was finished, he went back to the shed with his dirty clothes but Jimmy was there already and had placed his hands on the shed's door and was telling Adams to get out. (DE# 17, T. 442-444). Jimmy was screaming and telling Adams that he should have killed him earlier. Jimmy wanted Adams to move out. (DE# 17, T. 445).

Adams then proceeded to his car with his dirty clothes, while Jimmy continued screaming and using foul language. Adams saw Jimmy with his hand jammed in his pants and Adams saw the butt of a gun, which caused Adams intense fear. (DE# 17, T. 446-447). Adams believed he was going to die and was trying to calm Jimmy down. By the time he noticed Rasheda, he fired because Jimmy "jumped to come at me." He thought that Jimmy was trying to get his own gun out. (DE# 17, T. 448-449, 451). Petitioner testified that he had the gun in the trailer because he was moving from the shed into the truck. (T. 449). When he shot Jimmy, Jimmy was behind a car. (DE# 17, T. 450).

After he shot Jimmy, Emma jumped on him. They tussled for the gun and then the gun went off twice. (DE# 17, T. 457). He was not sure, but he thought she had what looked like a knife and he thought the knife cut his hand. He was also in fear thinking that if she got the gun, he was going to die. (DE# 17, T. 453-457). Petitioner admitted that after the shooting, he threw the gun away. (DE# 17, T. 451). He then went to his friend's house a couple miles away and told his friend to take him to the police. (DE# 17, T. 459).

On cross-examination, he was impeached with his prior statement to the police the night of shooting that he had gotten

the cut on his hand when fighting with Jimmy. He did not recall that answer and then denied saying that to the police. (DE# 17, T. 469-470). Petitioner was also impeached with his previous statement to the police, in which he failed to mention that Jimmy had a gun. (DE# 17, T. 470-471). Petitioner explained that although he was terrified of Jimmy, he continued to live with Emma where he knew Jimmy visited frequently. (DE# 17, T. 472). Petitioner first testified that prior to 2009, Emma never asked him to leave the house, but later admitted that he may have received a verbal eviction from her. He never received a formal letter but she told him to leave maybe twice. (DE# 17, T. 473-475).

Petitioner learned that he shot Jimmy in the chest, but had no memory of this fact. Petitioner testified that when he shot Jimmy the second time, Jimmy was running towards him from the side. Adams denied shooting Jimmy in the back and denied shooting Emma while she was on the ground. (DE# 17, T. 477-479).

On rebuttal, Detective Marinella testified that he took Petitioner's statement the night of the shootings. Petitioner was read, understood, and waived his Miranda rights. (DE# 17, T. 482-484). Adams told Marinella that he got the cut on his hand from Jimmy "slamming the door" on him. Petitioner never said that he got his cut from Emma's knife as she jumped him. The portion of the transcript of Petitioner's statement where he explained this was read into the record. (DE# 17, T. 484-485).

Similarly, Marinella testified that on the night Petitioner gave his statement, he never said that Jimmy had a gun on him. Adams did mention that he believed he saw a knife. (DE# 17, T. 486-487). On cross-examination, counsel asked if Petitioner had not explained that the cut on his hand was from Emma's knife. Marinella

said that Petitioner said "the same knife that she went at" and
that he appeared to explain that the cut may also have come from
Emma having a knife. (DE# 17, T. 488-490).

Counsel again moved for a judgment of acquittal arguing that
the State had failed to prove all elements of the crime charged.
(DE# 17, T. 492-494).

During the jury instruction conference, when discussing the
forcible felony instruction, the prosecutor noted that there could
be a potential problem because the "forcible felony" had to be
immediately defined. Defense counsel then suggested that the
forcible felony would be the aggravated battery. When further
trying to determine whether to give the rest of the definitions,
defense counsel asked the court to give all the definitions, just
in case. The trial court stated again that it would list all of the
same crimes charged and all the lesser included offenses under the
"applicable independent felony." Moreover, when the court asked if
there was any objection to doing it this way, no party objected and
defense counsel said that they just had to be listed, not
necessarily be defined. Finally, with respect to the subparts under
the instruction regarding justifiable use of deadly force when the
Petitioner provoked the attack, defense counsel requested that both
subsection a., right to use deadly force even as provoker when the
amount of force back is unreasonable, and subsection b., the right
to use deadly force even when being the provoker if the force was
withdrawn but the force continued so that he had a right use deadly
force, be given. (DE# 17, T. 508-511).

During closing arguments, the State did not mention the
erroneous forcible felony instruction instead focusing only the
right to self-defense when it is reasonable. (DE# 17, T. 538-539,

10

544). During defense counsel's closing, he emphasized the following part of the instruction: "you must judge him by the circumstances by which he was surrounded. The danger facing the Petitioner need not have been actual. However, to justify the use of deadly force likely to cause death or great bodily harm, the appearance of danger must have been so real that a reasonably cautious or prudent person under the same circumstances would have had believed that the danger could be avoided only through the use of that force." Based on appearances, the Petitioner must have actually believed that the danger was real. (DE# 17, T. 547). The erroneous instruction was read. (DE# 17, T. 581; DE# 16, App. B pgs 53-55).

The jury found Petitioner guilty of second degree murder by discharging a firearm and guilty of attempted first degree murder by discharging a firearm and causing great bodily harm and possessing the firearm (DE# 17, T. 600-601).

On September 12, 2011, Petitioner was sentenced to life in prison with a minimum mandatory sentence of 25 years. (DE# 16, App. B, pg. 56-65).

On appeal to the Third District Court of Appeal, Adams raised the following claims (3D11-2432): The trial court committed fundamental error when it read to the jury the forcible felony instruction as part of the self-defense instruction, since petitioner was not charged with an independent forcible felony. (DE# 16, App. C). In its answer brief, the State argued that based on a review of the record, the trial court did not commit fundamental error when it read the forcible felony instruction because self-defense was not a viable defense, as the Petitioner's version of events was refuted by two eyewitnesses and the facts of this case do not establish the appearance of danger so real that a

11

reasonably cautious or prudent person under the same circumstances would believe that the danger could only be avoided through the use of deadly force. (DE# 16, App. D). The State also argued that defense counsel affirmatively waived the issue of the erroneous jury instruction when he told the court to insert aggravated battery or aggravated assault as the "independent felony" as previously explained within the instruction and list all the lesser included offenses previously defined.

On December 19, 2012, the district court per curiam affirmed. Adams v. State, 103 So. 3d 164 (Fla. 3d DCA 2012) (table). He did not seek further review in the Florida Supreme Court or with the Supreme Court of the United States.

His first post-conviction filing was on May 29, 2013, when he filed a petition alleging ineffective assistance of appellate counsel (3D13-1411). He raised the following claims:

> 1. Ineffective assistance of appellate counsel for failing to argue that the trial court erred in failing to make the required factual determinations in support of denying petitioner's motion to dismiss;
>
> 2. Ineffective assistance of appellate counsel for failing to allege as a fundamental error that the trial court erred in failing to combine both Jimmy and Emma Harrison's injuries in a single self-defense instruction;
>
> 3. Ineffective assistance of appellate counsel for failing to allege as a fundamental error that the trial court erred in failing to administer the initial provoker section of the justifiable use of force instruction as it deprived petitioner of his stand your ground defense.

(DE# 16, App. E). The court did not request a response from the State. On June 5, 2013, the district court denied the petition. (DE# 16, App. F).

On August 29, 2013, Adams filed a petition alleging ineffective assistance of trial counsel. (DE# 16, App. G). He raised the following grounds:

1. Ineffective assistance of counsel for failing to object to the reading of the forcible felony instruction without a charge of an independent felony;

2. Ineffective assistance of counsel for failing to object to combining both of Jimmy and Emma Harrison's injuries in a single defense instruction;

3. Ineffective assistance of counsel for failing to object to the application of the initial provoker section of the justifiable use of force instruction as it deprived petitioner of the stand your ground defense;

4. Ineffective assistance of counsel for failing to object to the crime scene investigator's testifying to the nature of the wounds sustained by Emma Harrison;

5. Ineffective assistance of counsel for failing to object to inadmissible bad character testimony of petitioner allegedly physically abusing Emma Harrison;

6. Ineffective assistance of counsel for failing to object to the trial court's failure to make factual determinations in support of denying petitioner's motion to dismiss;

7. Ineffective assistance of counsel where counsel permitted impeachment evidence to be used as substantive evidence of guilt;

8. Ineffective assistance of counsel for failing to move for a limited instruction on the use of impeachment evidence;

9. Ineffective assistance of counsel for failing to investigate and present evidence of gunpowder residue;

10. Ineffective assistance of counsel for failing to investigate and present expert testimony on alleged gunshot wounds;

11. He was denied a fundamentally fair trial due to the

13

ENTERED

impact of cumulative errors committed by defense counsel.

(DE# 16, App. G).  The State filed a written response to the allegations. (App. H).

On February 27, 2014, the state circuit court summarily denied the motion for post-conviction relief. (DE# 16, App. I).

Adams's motion for rehearing (DE# 16, App. J) was denied on April 10, 2014. (DE# 16, App. K). He appealed to the Third District Court of Appeal (Case Number 14-1381). On August 6, 2014, the court per curiam affirmed, without requesting a response from the State. Adams v. State, 150 So. 3d 1150 (Fla. 3d DCA 2014)(table). Adams filed a motion for rehearing, (DE# 16, App. L), that was denied on August 28, 2014. (DE# 16, App. M).

On or about January 30, 2015,[1] petitioner came to this court, filing the instant petition pursuant to 28 U.S.C. §2254. (DE# 1).

IV.   Threshold Issues - Timeliness

The respondent rightfully does not challenge the timeliness of the petition. See 28 U.S.C. §2244(d)(1)-(2). See also Insignares v. Fla. Dep't of Corr's,[2] ____ F.3d ___, 2014 WL 2809410 (11th Cir. 2014)(citing Ferreira v. Secretary, Dept. of Corrections, 494 F.3d

---

[1]This Court applies the "mailbox rule" and deems the petition "filed on the date it was delivered to prison authorities for mailing." Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n. 4 (11th Cir. 2008). See also Adams v. United States, 173 F.3d 1339 (11th Cir. 1999)(prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

[2]In Insignares, the Eleventh Circuit found that, for purposes of the AEDPA, "judgment" refers to the underlying conviction and the most recent sentence that authorizes a petitioner's current detention. Id. The court noted that a resentencing results in a new judgment that restarts the AEDPA's one-year statute of limitations period. Id. (citing Ferreira, at 1292-1293).

1286, 1293 (11th Cir. 2007), *cert. denied*, 555 U.S. 1149, 129 S.Ct.
1033, 173 L.Ed.2d 315 (2009))(commencing the one year period from
the date of resentencing, where state prisoner was resentenced as
a result of a successful <u>Fla.R.Cr.P.</u> 3.850 motion), <u>applying</u> <u>Burton</u>
<u>v. Stewart</u>, 549 U.S. 147, 127 S.Ct. 793, 166 L.Ed.2d 628
(2007)(other citations omitted).

V. <u>Governing Legal Principles</u>

A. <u>Standard of Review under the Antiterrorism and
Effective Death Penalty Act of 1996 ("AEDPA")</u>

As indicated in the initial Report, this federal habeas
petition is governed by 28 U.S.C. §2254(d), as amended by the
AEDPA. Pursuant to the AEDPA, federal habeas relief may not be
granted with respect to a claim adjudicated on the merits in state
court unless adjudication of the claim:

> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application
> of, clearly established Federal law, as
> determined by the Supreme Court of the United
> States; or
>
> (2) resulted in a decision that was based on
> an unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

28 U.S.C. §2254(d). This standard is both mandatory and difficult
to meet. <u>White v. Woodall</u>, ___ U.S. ____, ___, 134 S.Ct. 1697,
1702, 188 L.Ed.2d 698 (2014); <u>see also</u>, <u>Debruce v. Commissioner,
Alabama Dept. of Corrections</u>, 758 F.3d 1263, 1265-66 (11th Cir.
2014). The AEDPA imposes a highly deferential standard for
reviewing the state court rulings on the merits of constitutional

15

claims raised by a petitioner. A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. White v. Woodall, 134 S.Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U .S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively

16

unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75–77, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (citation omitted); Mitchell, 540 U.S. at 17–18; Ward, 592 F.3d at 1155. Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S.Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786–787, 178 L.Ed.2d 624 (2011)).

It is also well settled that the state court is not required to cite, or even have an awareness of, governing Supreme Court precedent, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); cf. Harrington, 562 U.S. at 98, 131 S.Ct. at 785 (reconfirming that "§2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" and entitled to deference); Mitchell v. Esparza, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(quoting Early v. Packer, 537 U.S. at 7–8).

Thus, state court decisions are afforded a strong presumption of deference even when the state court adjudicates a petitioner's claim summarily—without an accompanying statement of reasons. Harrington, 562 U.S. at 91–99, 131 S.Ct. at 780–84 (concluding that the summary nature of a state court's decision does not lessen the deference that it is due); Gill v. Mecusker, 633 F.3d 1272, 1288 (11th Cir. 2011)(acknowledging the well-settled principle that

summary affirmances are presumed adjudicated on the merits and warrant deference, *citing* <u>Harrington</u>, 562 U.S. at 98-99, 131 S.Ct. at 784-85 and <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1254 (11th Cir. 2002)). <u>See also</u> <u>Renico v. Lett</u>, 559 U.S. 766, 773, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings ... and demands that state-court decisions be given the benefit of the doubt.")(citations and internal quotation marks omitted).

The Supreme Court has also stated that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" <u>Miller—El v. Cockrell</u>, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (*dictum*). When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U .S.C. § 2254(e)(1); <u>see</u>, <u>e.g.</u>, <u>Burt v. Titlow</u>, ____ U.S. ___, ___, 134 S.Ct. 10, 1516, 187 L.Ed.2d 348 (2013); <u>Miller—El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

The Supreme Court has recognized that the AEDPA imposes a highly deferential standard for evaluating state-court rulings and requires that state-court decisions be given the benefit of the doubt. <u>Burt v. Titlow</u>, _____ U.S. _____, ___, 134 S.Ct. 10, 15 (2013)(stating, "AEDPA recognizes a foundational principle of our

federal system: State courts are adequate forums for the vindication of federal rights."); <u>Hardy v. Cross</u>, 565 U.S. ___, ___, 132 S.Ct. 490, 491, 181 L.Ed.2d 468 (2011)(noting that the AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.")(<u>quoting</u> <u>Felkner v. Jackson</u>, 562 U.S. 594, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374 (2011)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington v. Richter</u>, 562 U.S. 86, 101-102, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011). <u>See also</u> <u>Greene v. Fisher</u>, ____ U.S. ___, ___, 132 S.Ct. 38, 43, 181 L.Ed.2d 336 (2011)(The purpose of AEDPA is "to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.")(internal quotation marks omitted).

As pointed out by the Eleventh Circuit, "the standard of §2254(d) is 'difficult to meet .... because it was meant to be.'" <u>Downs v. Sec'y, Fla. Dep't of Corr's</u>, 748 F.3d 240 (11th Cir. 2013)(<u>quoting</u>, <u>Titlow</u>, 134 S.Ct. at 16). This "highly deferential standard" demands that "[t]he petitioner carries the burden of proof," <u>Id</u>., <u>quoting</u>, <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1398 (2011)(internal quotation marks omitted) and "'that state-court decisions be given the benefit of the doubt,' <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002).'" <u>Id</u>.

Further, review under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the

19

merits. See Cullen v. Pinholster, 563 U.S. ___, 131 S.Ct. 1388, 1398-1400, 179 L.Ed.2d 557 (2011)(holding new evidence introduced in federal habeas court has no bearing on Section 2254(d)(1) review). And, a state court's factual determination is entitled to a presumption of correctness. 28 U.S.C. §2254(e)(1). Under 28 U.S.C. §2254(e)(1), this Court must presume the state court's factual findings to be correct unless the petitioner rebuts that presumption by clear and convincing evidence. See id. §2254(e)(1). As recently noted by the Eleventh Circuit in Debruce, 758 F.3d at 1266, although the Supreme Court has "not defined the precise relationship between § 2254(d)(2) and §2254(e)(1)," Burt v. Titlow, ___ U.S. ___, ___, 134 S.Ct. 10, 15, 187 L.Ed.2d 348 (2013), the Supreme Court has emphasized "that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Burt, Id. (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S.Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

## B. Ineffective Assistance of Counsel Standard

Petitioner claims that trial counsel provided constitutionally ineffective assistance. This Court's analysis begins with the familiar rule that the Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defense." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective

20

assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. 4, 8, 130 S.Ct. 13, 175 L.Ed.2d 255 (2009); Cullen v. Pinholster, 563 U.S. ___, ___, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011). "[T]he Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." Bobby Van Hook, 558 U.S. at 9 (internal quotations and citations omitted).

A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Id. at 690-91. To uphold a lawyer's strategy, the Court need not attempt to divine the lawyer's mental processes underlying the strategy. "There are countless ways to provide effective assistance in any given case." Strickland, 466 U.S. at 689. No lawyer can be expected to have considered all of the ways. Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001). If the petitioner cannot meet one of Strickland's prongs, the court does not need to address the other prong. Strickland, 466 U.S. at 697. See also Butcher v. United States, 368 F.3d 1290, 1293

(11th Cir. 2004); <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000).

The <u>Strickland</u> test applies to claims involving ineffective assistance of counsel during the punishment phase of a non-capital case. <u>See</u> <u>Glover v. United States</u>, 531 U.S. 198 (2001)(holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established <u>Strickland</u> prejudice"). Prejudice is established if "there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh." <u>Spriggs v. Collins</u>, 993 F.2d 85, 88 (5th Cir. 1993). The standard is also same for ineffective assistance of appellate counsel claims, requiring petitioner to demonstrate deficient performance and prejudice. <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009)(<u>citing</u> <u>Heath v. Jones</u>, 941 F.2d 1126, 1130 (11th Cir. 1991)); <u>Smith v. Robbins</u>, 528 U.S. 259, 285-86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); <u>Roe v. Flores-Ortega</u>, 528 U.S. at 476-77.

If the Court finds there has been deficient performance, it must examine the merits of the claim omitted on appeal. If the omitted claim would have had a reasonable probability of success on appeal, then the deficient performance resulted in prejudice. <u>Eagle</u>, 279 F.3d at 943. <u>See also</u> <u>Digsby v. McNeil</u>, 627 F.3d 823, 831 (11th Cir. 2010)(holding that to determine whether the petitioner's appellate counsel rendered ineffective assistance, the court must assess the strength of the claim that the petitioner asserts his appellate counsel should have raised in his state direct appeal and only if failure to bring the claim both rendered counsel's performance deficient and resulted in prejudice to the petitioner was there ineffective assistance); <u>Joiner v. United States</u>, 103 F.3d 961, 963 (11th Cir. 1997). Non-meritorious claims

which are not raised on direct appeal do not constitute ineffective assistance of counsel. Diaz v. Sec'y for the Dep't of Corr's, 402 F.3d 1136, 1144-45 (11th Cir. 2005).

Further, the Supreme Court has held that the Sixth Amendment does not require appellate attorneys to press every non-frivolous issue that the client requests to be raised on appeal, provided that counsel uses professional judgment in deciding not to raise those issues. Jones v. Barnes, 463 U.S. 745 (1983). In considering the reasonableness of an attorney's decision not to raise a particular issue, this Court must consider "all the circumstances, applying a heavy measure of deference to counsel's judgments." Eagle v. Linahan, 279 F.3d 926, 940 (11th Cir. 2001), quoting, Strickland, 466 U.S. at 691.

Keeping these principles in mind, the Court must now determine whether counsel's performance was both deficient and prejudicial under Strickland. As indicated, Courts must be highly deferential in reviewing counsel's performance, and must apply the strong presumption that counsel's performance was reasonable. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689. See also Chandler v. United States, 218 F.3d at 1314. "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284, 297 (2010). See also Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir. 2006)(citing Chandler v. United States, 218 F.3d at 1313).

A habeas court's review of a claim under the Strickland standard is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009), citing,

<u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per curiam). The relevant question "is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." <u>Knowles</u>, 556 U.S. at 123, 129 S.Ct. at 1420. (citations omitted). Finally, "because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Id</u>

Under AEDPA, a habeas petitioner must establish that the state court's application of <u>Strickland</u> was unreasonable under 28 U.S.C. §2254(d). "Where the highly deferential standards mandated by <u>Strickland</u> and AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.'" <u>Gissendaner v. Seaboldt</u>, 735 F.3d 1311, 1323 (11th Cir. 2013)(<u>quoting</u> <u>Harrington</u>, 562 U.S. at 103, 131 S.Ct. at 788).

## VI. <u>Discussion</u>

In **claim 1**, the petitioner asserts ineffective assistance of counsel for failing to object to the reading of the forcible felony instructions under Fla. Stat. §776.041(1) (2009) without a charge of an independent felony. (DE# 1:3-5). He raised the same claim under ground 1 in his Rule 3.850 motion. (DE# 16, App. G). The State filed a written response to the allegations. (DE# 16, App. H). On February 27, 2014, the state circuit court summarily denied the motion for post-conviction relief. (DE# 16, App. I). The court's order provided as follows on this issue:

In Ground One of his motion the Petitioner claims that

24

trial counsel was ineffective for failing to object to
the "independent forcible felony instruction" as part of
the jury instruction on the justifiable use of deadly
force. Specifically the Petitioner argues that the instruction
regarding the unavailability of self-defense if the Petitioner was
engaged in a forcible felony was error, and the outcome of the trial
and/or his appeal would have been different but for this alleged
deficiency. The record in this case refutes these allegations. As
to the first count, the second degree murder of Jimmy Harrison, the
only evidence of self-defense came from the Petitioner's trial
testimony, in which he claimed that the victim, Jimmy Harrison, had
a gun and threatened him with it. (TT 450-451). This testimony was
inconsistent with the statement he gave to police on the night of
the homicide in which he never mentioned that Jimmy Harrison had a
firearm. (TT 486). Moreover, both Rashida Harrison and Emma Harrison
testified that Jimmy Harrison was unarmed that night and that he and
the Petitioner were at all times separated from each other by at
least a car's length during their verbal altercation. Additionally,
no weapons were recovered at the crime scene (TT 281, 286). As to
Count 2, the attempted premeditated murder of Emma Harrison, the
jury could consider that the Petitioner was engaged in a forcible
felony, or fleeing from a forcible felony, namely the second degree
murder of Jimmy Harrison, so the instruction as to the independent
forcible felony was supported by the evidence and entirely proper.
As such, this claim is summarily denied.

(DE# 16, App. I:1-2).


Adams's motion for rehearing (DE# 16, App. J) was denied on
April 10, 2014. (DE# 16, App. K). He appealed to the Third District
Court of Appeal (Case Number 14-1381). On August 6, 2014, the court
per curiam affirmed, without requesting a response from the State.
Adams v. State, 150 So. 3d 1150 (Fla. 3d DCA 2014)(table). Adams
filed a motion for rehearing, (DE# 16, App. L), that was denied on
August 28, 2014. (DE# 16, App. M).


In Martinez v. State, 981 So. 2d 449 (Fla. 2008), the Florida
Supreme Court address the same issue.  In Martinez, the trial court
read the forcible felony exception to self-defense instruction but
Mr. Martinez was charged with only one forcible felony, namely, the
act of stabbing his girlfriend.  The court held that "for the

forcible felony instruction to apply, there must be an independent forcible felony other than the one which the Petitioner claims he or she committed in self-defense." Id. at 457. The court concluded that it was error to give the instruction, but the error was not preserved by any objection. The court then discussed the application of fundamental error analysis. Id.

In Adams's case, based upon the opinion in Martinez, the State acknowledged that the trial court erred in giving the forcible felony exception to self-defense instruction. (DE# 17, T. 581). Pursuant to Martinez, the issue then becomes whether this error amounted to fundamental error under the facts of the record. Based upon a review of the record evidence adduced at trial, where Petitioner did not present a viable claim of self-defense, the forcible felony instruction did not rise to the level of fundamental error.

At trial, the only evidence of self-defense came from the Petitioner's trial testimony, in which he claimed that the victim, Jimmy Harrison, threatened him with a gun. (DE# 17, T. 450-451). This testimony was inconsistent with the statement he gave to police on the night of the homicide in which he never mentioned that Jimmy Harrison had a firearm. (DE# 17, T. 486). Moreover, both Rashida Harrison and Emma Harrison testified that Jimmy Harrison was unarmed that night and that he and Petitioner were at all times separated from each other by at least a car's length during their verbal altercation. Additionally, no weapons were recovered at the crime scene (DE# 17, T. 281, 286). As to Count 2, the attempted premeditated murder of Emma Harrison, the jury could consider that Petitioner was engaged in a forcible felony, or fleeing from a forcible felony, namely, the second degree murder of Jimmy Harrison, so the instruction as to the independent forcible felony was

supported by the evidence and entirely proper.

The facts of this case do not establish the appearance of danger so real that a reasonably cautious or prudent person under the same circumstances would believe that the danger could only be avoided through the use of deadly force. Jimmy was yelling and telling Petitioner to leave and obscenities were being exchanged by both as Petitioner continued to put his clothes in the back of his trailer. However, as there was a car's length distance between Petitioner and Jimmy, Adams could have kept his distance from the victim by simply staying where he was by his trailer, or getting into his truck and leaving. Rather than fire two shots into the unarmed victim, Petitioner could have displayed his firearm or even fired a warning shot into the ground to stop the altercation. Instead, Petitioner shot at least one shot directly into the victim's chest and then chased the fleeing victim and fired a second shot in his back.

Despite the fact that the victim insulted him, called him names, and told Adams to leave the house, the state presented ample evidence that the victim never produced any type of weapon. On the night that he was arrested, Petitioner never told the police that Jimmy had a gun. The police searched the house immediately after the shooting and never found any weapons in the shed or the surrounding area. In addition, officers did not find any weapons on the deceased or on Emma at the hospital. Under these facts, the erroneous forcible felony instruction did not deprive Petitioner of a fair trial. As in Martinez, Petitioner's claim of self-defense "was extremely weak." See Martinez, 981 So. 2d at 456 (finding that the instruction was not fundamental error because "Martinez's claim of self-defense was extremely weak. It is clear from the disturbing facts of this case that Martinez's claim that he had to fight for

his life and did not have an opportunity to leave the room strained even the most remote bounds of credulity[,]" comparing the nature of the injuries to the victim and the small cut in defendant). Even if the forcible felony instruction had not been given, "the possibility that the jury would have found [Defendant] not guilty . . . by reason of self-defense is minimal at best." Id. Thus, when examined in the context of the entire record, the forcible felony instruction did not amount to fundamental error.

Moreover, with respect to Adams's argument on appeal that he was also defending himself against Emma, he cannot assert self-defense when Emma jumped on him because he was getting ready to shoot her fleeing son. (DE# 17, T. 360, 386). From this evidence, it is evident that as to Count Two of the information, the attempted first degree murder of Emma, Adams was in fact committing an independent felony, the second degree murder of Jimmy Harrison, so that he could not have availed himself of the self-defense instruction.

She struggled with Adams until he threw her to the ground. (DE# 17, T. 360-361). Emma heard the gun click and as she turned around, she saw the "fire" come out of the gun and hit her on her side. As she felt a burning sensation on her back, she rolled over. (DE# 17, T. 361). Adams stood in front of her, she looked up, and he shot her in the head. She felt burning and blood dripping. (DE# 17, T. 361). She denied being armed that night. (DE# 17, T. 364).

Based on the evidence, Adams should not have been entitled to a self-defense instruction as to count two, the attempted first degree murder of Emma Harrison.  First, the evidence does not corroborate such use of self-defense, and, second, if he was murdering Jimmy Harrison, or attempting to murder Jimmy or escaping

after the commission of Jimmy's murder, then the exception independent forcible felony instruction would apply. Accordingly, the state court properly denied the claim.

No showing has been made either in the state forum or this habeas proceeding that counsel was ineffective in failing to object to the reading of the forcible felony instructions under Fla. Stat. §776.041(1) (2009) without a charge of an independent felony. As a result, the rejection of this claim in the state Rule 3.850 proceeding was neither contrary to nor an unreasonable application of controlling federal constitutional principles. It should not be disturbed here. Williams v. Taylor, supra.

In **claim 2**, the petitioner asserts ineffective assistance of counsel for failing to object to combining both of the victims' injuries in a single defense instruction (DE# 1:5-7). He raised the same claim under ground 2 in his Rule 3.850 motion. (DE# 16, App. G). The State filed a written response to the allegations. (DE# 16, App. H). On February 27, 2014, the state circuit court summarily denied the motion for post-conviction relief. (DE# 16, App. I). The court's order provided as follows on this issue:

> In Ground Two, the Petitioner argues that his counsel was ineffective for failing to object to the trial court's reading of the self-defense instruction one time for both counts. The jury was told that the self-defense instruction was applicable to both counts. (TT 580-584). Moreover, the jury was given a physical copy of the instructions to take back with them into the jury room for use during their deliberations. The Petitioner fails to establish that the outcome of the trial would have been different had the judge read the instruction twice. As such, this claim is summarily denied.

(DE# 16, App. I:2).  Adams's motion for rehearing (DE# 16, App. J)

was denied on April 10, 2014. (DE# 16, App. K).

He appealed to the Third District Court of Appeal (Case Number 14-1381). On August 6, 2014, the court per curiam affirmed, without requesting a response from the State. Adams v. State, 150 So. 3d 1150 (Fla. 3d DCA 2014)(table). Adams filed a motion for rehearing, (DE# 16, App. L), that was denied on August 28, 2014. (DE# 16, App. M).

Petitioner argues that his trial counsel was ineffective for failing to object to a single self-defense instruction for both counts one and two. (DE# 1:5-7).  He relies solely on the trial court's single-instance use of the term "and" at the introduction of the self-defense instruction. (Id.). Based on a review of the record, the state court properly denied this claim finding that the jury was instructed for the remainder of the instruction that the defense of self-defense was applicable to either count one or count 2 or both. (DE# 17, T. 580-584). The jury was also given a physical copy of the instructions to take back with them into the jury room for use during their deliberations. Thus, the Petitioner fails to establish that the outcome of the trial would have been different had the judge read the instruction twice. Accordingly, as Petitioner's claims fail under both prongs of Strickland.

No showing has been made either in the state forum or this habeas proceeding that counsel was ineffective in failing to object to combining both of the victims' injuries in a single defense instruction. As a result, the rejection of this claim in the state Rule 3.850 proceeding was neither contrary to nor an unreasonable application of controlling federal constitutional principles. It should not be disturbed here. Williams v. Taylor, supra.

In **claim 3**, the petitioner asserts ineffective assistance of counsel for failing to object to the application of the initial provoker section, Fla. Stat. §776.041(2), of the justifiable use of force instruction as it deprived petitioner of the stand your ground defense (DE# 1:7-9). He raised the same claim under ground 3 in his Rule 3.850 motion. (DE# 16, App. G). The State filed a written response to the allegations. (DE# 16, App. H). On February 27, 2014, the state circuit court summarily denied the motion for post-conviction relief. (DE# 16, App. I). The court's order provided as follows on this issue:

> In Ground Three the Petitioner claims that trial counsel was ineffective for failing to object to the "initial aggressor" instruction as part of the jury instruction on justifiable use of deadly force. However, the record supports that the Petitioner was the initial aggressor. Both witnesses Emma Harrison and Rashida Harrison testified that it was the Petitioner who provoked the violence that lead to the death of Jimmy Harrison. (TT 322-324, 358-360). Counsel for the Petitioner had no legal basis to object to an instruction that was supported by the evidence. As such, this claim is summarily denied.

(DE# 16, App. I:2). Adams's motion for rehearing (DE# 16, App. J) was denied on April 10, 2014. (DE# 16, App. K).

He appealed to the Third District Court of Appeal (Case Number 14-1381). On August 6, 2014, the court per curiam affirmed, without requesting a response from the State. Adams v. State, 150 So. 3d 1150 (Fla. 3d DCA 2014)(table). Adams filed a motion for rehearing, (DE# 16, App. L), that was denied on August 28, 2014. (DE# 16, App. M).

Petitioner argues here that his counsel was ineffective for failing to object to the "initial aggressor" instruction as part of the self-defense instructions. He states that his defense was

31

self-defense pursuant to Florida's "stand your ground" law, Fla. Stat. §776.013(3). When instructing the jury on §776.013(3), the Court stated the following:

> There is no duty to retreat where the defendant was not engaged in any unlawful activity *other than the crime or crimes for which the defendant asserts the justification*. If the defendant was not engaged in any unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force, including deadly force, if he reasonably believed that it was necessary to prevent death or great bodily harm to himself or to prevent the commission of a forcible felony.

(emphasis added). However, while instructing the jury, the Court also gave the following "initial provoker" instruction to the jury:

> However, the use of deadly force is not justifiable if you find:
>
> 1. LEONARD ADAMS initially provoked the use of force against himself, unless:
>
> A. the force asserted toward the defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm and *had exhausted every reasonable means to escape the danger*, other than using deadly force on JIMMY HARRISON OR EMMA HARRISON.
>
> B. in good faith, the defendant withdrew from physical contact with JIMMY HARRISON OR EMMA HARRISON and clearly indicated to JIMMY HARRISON OR EMMA HARRISON that he wanted to withdraw and stop the use of deadly force, but JIMMY HARRISON continued or resumed the use of force.

§776.041(2)(emphasis added).

Petitioner argues that on one hand, the jury was told that he had no duty to retreat, but on the other hand, the jury was told that Adams had to exhaust every reasonable means to escape the

danger. Petitioner contends that the "justifiable use of force" instruction negated his "Stand Your Ground" defense.

The state postconviction court summarily denied this claim finding that the record supported that the Petitioner was the initial aggressor. Both Emma Harrison and Rashida Harrison testified that it was Petitioner who provoked the violence that lead to the death of Jimmy Harrison. (DE# 17, T. 322-324, 358-360). Counsel for the Petitioner had no legal basis to object to an instruction that was supported by the evidence. Ladd v. Jones, 864 F.2d 108, 110 (11th Cir.1989) (holding where "claims were meritless, it was clearly not ineffective for counsel not to pursue them."). These findings also mean that Adams cannot show that he suffered prejudice resulting from his attorney's performance. See Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (defense counsel is not ineffective for failing to raise a non-meritorious issue); Lockhart v. Fretwell, 506 U.S. 364, 374, 113 S.Ct. 838, 845, 122 L.Ed.2d 180 (1993) ("the court making the prejudice determination may not consider the effect of an objection it knows to be wholly meritless under current governing law....") (O'Connor, J. concurring). Accordingly, the Petitioner cannot establish prejudice under Strickland.

No showing has been made either in the state forum or this habeas proceeding that counsel was ineffective in failing to object to the application of the initial provoker section, Fla. Stat. §776.041(2), of the justifiable use of force instruction as it deprived petitioner of the stand your ground defense. As a result, the rejection of this claim in the state Rule 3.850 proceeding was neither contrary to nor an unreasonable application of controlling federal constitutional principles. It should not be disturbed here. Williams v. Taylor, supra.

33

In **claim 4**, the petitioner asserts ineffective assistance of counsel for failing to object to inadmissible bad character testimony of petitioner allegedly physically abusing Emma Harrison (DE# 1:9-12).  He raised the same claim under ground 5 in his Rule 3.850 motion. (DE# 16, App. G). The State filed a written response to the allegations. (DE# 16, App. H). On February 27, 2014, the state circuit court summarily denied the motion for post-conviction relief. (DE# 16, App. I). The court's order provided as follows on this issue

> In Ground Five, the Petitioner claims that trial counsel was ineffective for failing to object to three comments made by state witnesses regarding the abusive relationship between the Petitioner and Emma Harrison. The record demonstrates that the prosecution did not refer to these comments in closing argument or make them a "feature" of the trial. Furthermore, the Petitioner fails to show any prejudice. He simply argues in conclusory fashion that "there exists a reasonable probability that the outcome of the trial would have resulted in an acquittal." As such, this claim is summarily denied

(DE# 16, App. I:3).  Adams's motion for rehearing (DE# 16, App. J) was denied on April 10, 2014. (DE# 16, App. K).

He appealed to the Third District Court of Appeal (Case Number 14-1381). On August 6, 2014, the court per curiam affirmed, without requesting a response from the State. <u>Adams v. State</u>, 150 So. 3d 1150 (Fla. 3d DCA 2014)(table). Adams filed a motion for rehearing, (DE# 16, App. L), that was denied on August 28, 2014. (DE# 16, App. M).

Petitioner argues that counsel was ineffective for failing to object to three comments made by state witnesses regarding the abusive relationship between Adams and Emma Harrison. In his

petition, Adams states that the trial court ordered the State to instruct the witnesses not to testify about any violence or abuse between Petitioner and Emma Harrison. He contends that many comments were made about his being violent and abusive towards Ms. Harrison. (DE# 17, T. 321, 323, 339, 350).

The complained of comments were isolated and were permissible to show the context of the relationship between Adams and Ms. Harrison and the events of the night of the shooting. They occurred when Rasheda Harris was testifying about the argument that escalated to the shooting. In context, the testimony was:

Q. Can you tell us what was going on between him and Jimmy?
A. They were arguing back and forth.
Q. What were they saying?
A. Jimmy was telling him that he has to go, that he has to pack his stuff and leave. And the defendant was saying I don't have to leave, or I don't have to do anything. And I just kind of, you know, put my hand on Jimmy's chest and, you know, told him, you know, calm down, there's no need for arguing. You know, let him get his stuff and, you know, you and auntie come down to my house while he gets the rest of his stuff, because, you know, he's –
Q. Okay. Is there -- were there any obscenities going back and forth?
A. Yes.
Q. Who—from which way?
A. From –well, the defendant said to Jimmy, oh so am I a – . . . ¶]–
Q. He said to?
A. Jimmy.
Q. And did Jimmy respond?
A. Yes.
Q. What did Jimmy say?
A. Jimmy said yes, you are putting your hands on my mother. Yes, you are.
Q. Did you notice Jimmy's demeanor? Did he appear angry?
A. He was—he wasn't angry. He was—he just wanted him to leave.
Q. So he was getting into it with –

35

```
     A. Right.
     Q. – with Mr. Adams? Did you at any point see Jimmy have
     any sort of weapon?
     A. No, he did not.
```

(DE# 17, T. 321-22). The witness then continued discussing the
events surrounding the shooting.

```
     Q. After he said so I'm a pussy-ass nigga' (sic), Junior
     said yes, for putting you hands on my mother, yes. And he
     said so I'm a fuck nigga' (sic) and he was like yeah,
     yeah, you are. As soon as he said that, I turned to my
     right to look over my right shoulder and the defendant
     pulled out a gun.
```

(DE# 17, T. 323). The witness described the weapon and how the
defendant pulled it out and his shooting of Jimmy. (T. 324). On
cross-examination, the defense asked further questions about the
argument.

```
     Q. Was Jimmy using—calling him certain curse words?
     A. They both were.
     Q. I'm asking you about Jimmy. Was Jimmy using words. .
     .
     Can you tell what he was saying to Mr. Adams?
     He said I don't understand why would a man hit a fucking
     woman. That's what he was saying to him.
     Q. Did he insult him?
     A. No, he did not.
     Q. No?
     A. As I repeated earlier, Mr. Adams asked him if he was
     those names and he said yes.
     Q. Asked who?
     A. The defendant said to Junior, so I am a p***[] and
     Junior said yeah, yeah, you are for hitting my mother.
     Yes, you are. And he asked him again, so I', a [] and he
     said yeah, yeah, you that too.
     Q. What does that mean?

     A. It's insults.
```

(DE# 17, T. 339-40).

The final comment occurred when the State asked Emma Harrison whether she asked Adams to leave the house. (T. 350). She stated: "He started getting violent and jealous of myself, my home, my children, and so I told him that I wasn't taking the abuse anymore, that he needed to leave." (DE# 17, T. 350).

Presumably, Adams takes issue with counsel's failure to object to the comments and move for a mistrial, arguing that the comments rendered the trial unfair and unconstitutional. A mistrial is appropriate only when a comment is so prejudicial that it vitiates the entire trial. See Ford v. State, 802 So.2d 1121, 1129 (Fla. 2001) (holding that a mistrial based on prosecutorial comments is appropriate only where a statement is so prejudicial that it vitiates the entire trial).

When considered in context, the questions explained the events surrounding the shooting. Thus, this testimony was relevant. Moreover, the State did not refer to these comments or make them a feature of the trial such that he was deprived of a fair trial. There was no prejudice that would vitiate the entire trial. Therefore, defense counsel was not deficient in failing to move for a mistrial. See Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (defense counsel is not ineffective for failing to raise a non-meritorious issue).

No showing has been made either in the state forum or this habeas proceeding that counsel was ineffective in failing to object to inadmissible bad character testimony of petitioner allegedly physically abusing Emma Harrison. As a result, the rejection of this claim in the state Rule 3.850 proceeding was neither contrary to nor an unreasonable application of controlling federal constitutional principles. It should not be disturbed here. Williams v. Taylor,

supra.

In **claim 5,** the petitioner asserts ineffective assistance of counsel for failing to object to the trial court's failure to make factual determinations in support of denying petitioner's motion to dismiss (DE# 1:12-13).  He raised the same claim under ground 6 in his Rule 3.850 motion. (DE# 16, App. G). The State filed a written response to the allegations. (DE# 16, App. H). On February 27, 2014, the state circuit court summarily denied the motion for post-conviction relief. (DE# 16, App. I). The court's order provided as follows on this issue:

> In Ground Six the Petitioner argues that trial counsel was ineffective for failing to object to the trial court's failure to make factual determinations in support of the denial of the Petitioner's motion for immunity from prosecution under "Stand Your Ground." Notwithstanding the Petitioner's complaint, trial counsel properly preserved the issue by arguing the motion pretrial. The issue was properly preserved for appeal by trial counsel and could have been raised on direct appeal. It is not cognizable under Rule 3.850. As such, this claim is summarily denied.

(DE# 16, App. I:3).  Adams's motion for rehearing (DE# 16, App. J) was denied on April 10, 2014. (DE# 16, App. K).

He appealed to the Third District Court of Appeal (Case Number 14-1381). On August 6, 2014, the court per curiam affirmed, without requesting a response from the State. Adams v. State, 150 So. 3d 1150 (Fla. 3d DCA 2014)(table). Adams filed a motion for rehearing, (DE# 16, App. L), that was denied on August 28, 2014. (DE# 16, App. M).

Here, the court made a factual determination that Adams was not entitled to immunity after reviewing the evidence presented in support of his motion and the State's rebuttal evidence. (DE# 16,

T. 39). The state court's credibility determination, and factual determination, that counsel preserved the issue presumed to be correct unless Petitioner rebuts the presumption of correctness by clear and convincing evidence. See 28 U.S.C. §2254(e)(1); Coulter v. Herring, 60 F.3d 1499, 1503 (11th Cir.1995) (applying the statutory presumption of correctness under §2254(d) to the state court's credibility determination), cert. denied, 516 U.S. 1122, 116 S.Ct. 934, 133 L.Ed.2d 860 (1996). Petitioner has not demonstrated that counsel was deficient or that counsel's actions resulted in prejudice under Strickland.

No showing has been made either in the state forum or this habeas proceeding that counsel was ineffective in failing to object to the trial court's failure to make factual determinations in support of denying petitioner's motion to dismiss. As a result, the rejection of this claim in the state Rule 3.850 proceeding was neither contrary to nor an unreasonable application of controlling federal constitutional principles. It should not be disturbed here. Williams v. Taylor, supra.

In **claims 6 & 7**, the petitioner asserts ineffective assistance of counsel where counsel permitted impeachment evidence to be used as substantive evidence of guilt and failed to move for a limited instruction on the use of impeachment evidence (DE# 1:13-15). He raised the same claim under grounds 7 and 8 in his Rule 3.850 motion. (DE# 16, App. G). The State filed a written response to the allegations. (DE# 16, App. H). On February 27, 2014, the state circuit court summarily denied the motion for post-conviction relief. (DE# 16, App. I). The court's order provided as follows on this issue:

In Grounds Seven and Eight the Petitioner alleges that

39

> trial counsel was ineffective for failing to object to portions of the State's closing argument in which the State referenced impeachment of the Petitioner, specifically inconsistencies between the Petitioner's trial testimony and the statement he gave to police. He argues that the jury could not consider this evidence as substantive evidence and that trial counsel was deficient for failing to request a "limiting" instruction on impeachment testimony. The Petitioner offers no legal support for his argument in either claim. Moreover he fails to establish any prejudice. As such, this claim is summarily denied.

(DE# 16, App. I:3). Adams's motion for rehearing (DE# 16, App. J) was denied on April 10, 2014. (DE# 16, App. K).

He appealed to the Third District Court of Appeal (Case Number 14-1381). On August 6, 2014, the court per curiam affirmed, without requesting a response from the State. Adams v. State, 150 So. 3d 1150 (Fla. 3d DCA 2014)(table). Adams filed a motion for rehearing, (DE# 16, App. L), that was denied on August 28, 2014. (DE# 16, App. M).

Adams alleges that counsel was ineffective for failing to object to portions of the State's closing argument in which the State referenced the inconsistencies between his trial testimony and the statement he gave the police. His rationale is that his prior statement was to be used for impeachment only and could not be used as substantive evidence against him, and that counsel should have requested a limiting instruction.

The standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-45 (1974); Hall v. Wainwright, 733 F.2d 766, 733 (11 Cir. 1984). In assessing whether the fundamental fairness of the

40

trial has been compromised, the totality of the circumstances are to be considered in the context of the entire trial, Hance v. Zant, 696 F.2d 940 (11 Cir.), cert. den'd, 463 U.S. 1210 (1983); and "[s]uch a determination depends on whether there is a reason-able probability that, in the absence of the improper remarks, the outcome of the trial would have been different." Williams v. Weldon, 826 F.2d 1018, 1023 (11 Cir.), cert. den'd, 485 U.S. 964 (1988).

The purpose of closing argument is to explain to the jury what it has to decide and what evidence is relevant to its decision. See United States v. Iglesias, 915 F.2d 1524, 1529 (11 Cir. 1990). The jury's decision is to be based upon the evidence presented at trial and the legal instructions given by the court. See Chandler v. Florida, 449 U.S. 560, 574 (1981)("Trial courts must be especially vigilant to guard against any impairment of the defendant's right to a verdict based solely upon the evidence and the relevant law."). See also Ward v. State, 765 So. 2d 299, 300 (Fla. 5 DCA 2000)("most of the prosecutor's comments were 'fair comment' on the defense counsel's closing argument"); Laboo v. State, 715 So. 2d 1034, 1035 (Fla. 1 DCA 1998)(prosecutor's comments to be viewed in context of all the evidence presented and the initial arguments of defense counsel).

Adams incorrectly asserts that his statement, offered by a party opponent, could not have been used as substantive evidence of guilt. See e.g. State v. Elkin, 595 so. 2d 119 (Fla. 3d DCA 1992)("Defendant Elkin's third, sworn statement to police as to her actions and whereabouts on the evening of her husband's murder, is inconsistent with other statements she made. It, as well as her previous two statements, is thus relevant and can be used by the state affirmatively to show consciousness of guilt and unlawful intent.") citing to Johnson v. State, 465 So.2d 499, 504 (Fla.),

cert. denied, 474 U.S. 865, 106 S.Ct. 186, 88 L.Ed.2d 155 (1985).

The statement was not obtained in violation of his constitutional rights, as he made the statement after being given and waiving his Miranda rights. As a result, the state could introduce the prior statement as substantive evidence of guilt. (DE# 17, T. 461-468). However, in the context of the entire closing argument the State did not argue that the previous statement given to the police was the truth, only that the Adams was not to be believed in regards to his self-defense claim. After reviewing the record in its entirety, it is evident that the prosecutor's brief remark was based on evidence in the record, and thus did not require a new trial.

No showing has been made either in the state forum or this habeas proceeding that counsel was ineffective where counsel permitted impeachment evidence to be used as substantive evidence of guilt and failed to move for a limited instruction on the use of impeachment evidence (DE# 1:13-15). As a result, the rejection of this claim in the state Rule 3.850 proceeding was neither contrary to nor an unreasonable application of controlling federal constitutional principles. It should not be disturbed here. Williams v. Taylor, supra.

In **claims 8 & 9**, the petitioner asserts ineffective assistance of counsel for failing to investigate and present evidence and expert testimony regarding gunpowder residue (DE# 1:15-17).  He raised the same claim under grounds 9 and 10 in his Rule 3.850 motion. (DE# 16, App. G). The State filed a written response to the allegations. (DE# 16, App. H). On February 27, 2014, the state circuit court summarily denied the motion for post-conviction relief. (DE# 16, App. I). The court's order provided as follows on

42

this issue

     In Ground Nine the Petitioner claims that trial
counsel was ineffective for failing to present evidence
regarding gunshot residue. His contention is that the
gunshot residue from the victim's chest wound would have
proven that the victim was shot with his own firearm and
not the Petitioner's. The Petitioner's claim is not
supported by law and is refuted by the record. First and
foremost, the Petitioner admitted that he fired the fatal
shot at the victim, but claimed that it was in
self-defense (TT 448-451), thus there was no dispute that
he shot the victim. Additionally, gunshot residue is
typically evidence that a person may have shot or handled
a firearm and it is not specific to a particular firearm.
Finally, the gunshot residue that was collected in this
case was from the victim's hands not from his chest (TT
303). Even if counsel could have secured such an expert
the only evidence to review was the evidence collected
which did not include gunshot residue from the chest
wound. As such, the Petitioner fails to establish
deficient performance by trial counsel and this claim is
summarily denied.

     In Ground Ten the Petitioner argues that trial
counsel was ineffective for failure to present expert
testimony to rebut the medical examiner's testimony
regarding the wounds sustained by Jimmy Harrison. The
Petitioner fails to proffer any expert that would testify
that the wound in Jimmy Harrison's neck was not caused by
a firearm. As such, this claim is summarily denied.

(DE# 16, App. I:4). Adams's motion for rehearing (DE# 16, App. J)
was denied on April 10, 2014. (DE# 16, App. K).

    He appealed to the Third District Court of Appeal (Case Number
14-1381). On August 6, 2014, the court per curiam affirmed, without
requesting a response from the State. Adams v. State, 150 So. 3d
1150 (Fla. 3d DCA 2014)(table). Adams filed a motion for rehearing,
(DE# 16, App. L), that was denied on August 28, 2014. (DE# 16, App.
M).

Petitioner fails to proffer any supporting evidence regarding the gunshot residue or proffered any expert that would testify that the wound in Jimmy Harrison's neck was not caused by a firearm. Constitutionally effective counsel "is not required to present every non-frivolous defense...." Chandler v. United States, 218 F.3d 1305, 1319 (11th Cir.2000) (en banc) "[N]or is counsel required to present all mitigation evidence, even if the additional mitigation evidence would not have been incompatible with counsel's strategy." Id. Rather, in certain instances "[g]ood advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others." Id. (quoting Rogers v. Zant, 13 F.3d 384, 388 (11th Cir.1994)).

Petitioner has not demonstrated that defense counsel's decision not to call an expert witness regarding the gunshot residue or Jimmy Harrison's injuries was anything other than reasonable trial strategy. "[W]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir.1995). Disagreements by a defendant with counsel's tactics or strategies will not support a claim of ineffective assistance of counsel. A habeas petitioner must overcome a presumption that the challenged conduct of one's counsel was a matter of strategy. Strickland, 466 U.S. at 689; United States v. Perry, 908 F.2d 56, 59 (6th Cir.1990). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d at 386 (11th Cir.1994).

No showing has been made either in the state forum or this

44

habeas proceeding that counsel was ineffective in failing to investigate and present evidence and expert testimony regarding gunpowder residue. As a result, the rejection of this claim in the state Rule 3.850 proceeding was neither contrary to nor an unreasonable application of controlling federal constitutional principles. It should not be disturbed here. Williams v. Taylor, supra.

In **claim 10**, the petitioner asserts he was denied a fundamentally fair trial due to the impact of cumulative errors committed by defense counsel (DE# 1:17). He raised the same claim under ground 11 in his Rule 3.850 motion. (DE# 16, App. G). The State filed a written response to the allegations. (DE# 16, App. H). On February 27, 2014, the state circuit court summarily denied the motion for post-conviction relief. (DE# 16, App. I). The court's order provided as follows on this issue

> In Ground Eleven the Petitioner argues that trial counsel
> was ineffective because of the cumulative effect of the
> above claims. For all of the reasons stated above, this
> claim is summarily denied

(DE# 16, App. I:4). Adams's motion for rehearing (DE# 16, App. J) was denied on April 10, 2014. (DE# 16, App. K).

He appealed to the Third District Court of Appeal (Case Number 14-1381). On August 6, 2014, the court per curiam affirmed, without requesting a response from the State. Adams v. State, 150 So. 3d 1150 (Fla. 3d DCA 2014)(table). Adams filed a motion for rehearing, (DE# 16, App. L), that was denied on August 28, 2014. (DE# 16, App. M).

"A defendant is entitled to a fair trial but not a perfect one." United States v. Ramirez, 426 F.3d 1344, 1353 (11 Cir. 2005)

(*quoting* <u>Lutwak v. United States</u>, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953). "[T]he 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible." <u>Ramirez</u>, 426 F.3d at 1353 (*quoting* <u>United States v. Thomas</u>, 62 F.3d 1332, 1343 (11 Cir. 1995)). The same principle of cumulative error may be applied to a post-conviction claim of ineffective assistance of counsel. <u>See, e .g., Fisher v. Angelone</u>, 163 F.3d 835, 852 (4th Cir.1998); <u>United States v. Duong</u>, 250 Fed. Appx. 904, 2007 WL 2981435 (10th Cir.2007); <u>United States v. Rooks</u>, 117 Fed. Appx. 237, 2004 WL 2799147 (4th Cir.2004).

Here, the individual claims raised under grounds one through nine lack merit. Cumulative error analysis does not apply in this case because there are no actual errors. Cumulative error analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors. Thus, when viewing the evidence in this case in its entirety, the alleged errors, neither individually nor cumulatively, infused the trial with unfairness as to deny Petitioner a fundamentally fair trial and due process of law. Accordingly, the result of the trial was not fundamentally unfair or unreliable. <u>See</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369-70 (1993). By extension, the state court's determination that Brown was not entitled to postconviction relief on this ground was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

Finally, this court has considered all of the petitioner's claims for relief, and arguments in support thereof. <u>See</u> <u>Dupree v.</u>

<u>Warden</u>, 715 F.3d 1295 (11th Cir. 2013)(<u>citing</u> <u>Clisby v. Jones</u>, 960 F.2d 925 (11th Cir. 1992)). For all of his claims, petitioner has failed to demonstrate how the state courts' denial of his claims, to the extent they were considered on the merits in the state forum, were contrary to, or the product of an unreasonable application of, clearly established federal law. To the extent they were not considered in the state forum, and a *de novo* review of the claim conducted here, as discussed in this Report, none of the claims individually, nor the claims cumulatively warrant relief. Thus, to the extent a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed herein or in the state forum, all arguments and claims were considered and found to be devoid of merit, even if not discussed in detail herein.

## VII.  <u>Evidentiary Hearing</u>

Petitioner's request for an evidentiary hearing must be denied. To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, is not refuted by the record and may entitled petitioner to relief. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007)(citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id</u>. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. den'd</u>, 541 U.S. 1034 (2004), an evidentiary hearing is not warranted.

VIII.   <u>Certificate of Appealability</u>

As amended effective December 1, 2009, §2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2254 Proceedings, Rule 11(b), 28 U.S.C. foll. §2254.

After review of the record, petitioner is not entitled to a certificate of appealability. "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. <u>Slack v. McDaniel</u>, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). <u>See also</u> <u>Eagle v. Linahan</u>, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised are clearly without merit, petitioner cannot satisfy the *Slack* test. <u>Slack</u>, 529 U.S. at 484.

As now provided by Rules Governing §2254 Proceedings, Rule 11(a), 28 U.S.C. foll. §2254: "[B]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

IX. <u>Conclusion</u>

48

Based upon the foregoing, it is recommended that the federal habeas petition be denied; that a certificate of appealability be denied; and, the case closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 2nd day of May, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Leonard Adams, Pro Se
      DC# M78270
      Northwest Florida Reception Center
      Inmate Mail/Parcels
      4455 Sam Mitchell Drive
      Chipley, FL 32428

      Nikole Hiciano
      Attorney General Office
      Department of Legal Affairs
      444 Brickell Avenue
      Suite 650
      Miami, FL 33131
      Email: Nikole.Hiciano@myfloridalegal.com